**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| ANTHONY HERNANDEZ, | : | Case No. 3:17-cv-00419 |
| Plaintiff, | : | District Judge Walter H. Rice |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : : : : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

Plaintiff Anthony Hernandez brings this case *pro se* challenging the Social Security Administration's denials of his applications for Disability Insurance Benefits and Supplemental Security Income. He disagrees with Administrative Law Judge George Michael Gaffaney's determination that he is not under a "disability" as defined by the Social Security Act. This determination compelled the Social Security Administration to deny Plaintiff's applications for benefits.

Plaintiff asserts that he has numerous health problems and that he is presently under hospice care. A report his mother wrote states that Plaintiff has a "current history of 1 or more years inability to function outside a highly supportive living arrangement." (Doc. #11, *PageID* #584). His health problems include cirrhosis of the liver (requiring 2 surgeries), alcoholism, mild strokes, back problems, internal bleeding into his stomach, and "draining

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

fluid around his stomach and heart." (Doc. #9, *PageID* #s 561-62). He has endured 2 heat strokes. He also has emotional difficulties. He feels low, pathetic, worthless, and useless. *Id*. at 562. He cannot drive anymore due to seizures, and he was under hospice care, at least as of April 2018.

Liberally construing Plaintiff's *pro se* submissions in his favor, he asserts that his health problems prevent him from working a full-time job and that the ALJ erred in concluding otherwise. *See Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 n.1 (6th Cir. 2010) ("keeping in mind the liberal standard accorded to *pro se* pleadings, we will address her contention here."); *see also Meek v. Comm'r of Soc. Sec.*, No. 96-3428, 1996 WL 596506, at *1 (6th Cir. 1996) ("liberally construing Meek's pro se brief ..."); *Meadows v. Berryhill*, 5:17-176-DCR, 2017 WL 1147453, at *2 (E.D. Ky. March 27, 2017) (and cases cited therein).

The Commissioner argues that Plaintiff has not raised any legally cognizable arguments and, as a result, has waived such arguments. This contention lacks merit because—when Plaintiff's materials are liberally construed in his favor, *Wright-Hines*, 597 F.3d 392, 396 n.1; *see Meadows*, 2017 WL 1147453, at *2 (and cases cited therein)—he sufficiently identifies his potentially disabling impairments, and he argues that the ALJ's findings are incorrect. He argues, for instance, that his part-time work was not influenced by his desire to apply for disability benefits, as the ALJ believed, but was influenced by his desire to work as much as he could. (Doc. #11, *PageID* #s 584-85). He also points to evidence he submitted to the Social Security Administration's Appeals Council, including a note his treating physician, Dr. Rose, wrote in July 2014 declaring that he (Plaintiff) could

not work over 20 hours a week. *Id*. at 585. Plaintiff also explains that cervical and lumbar MRIs in July 2014 and March 2014 resulted in diagnoses of syringomyelia and syringobullia. *Id*. at 586. Because Plaintiff has submitted this, plus additional evidence, for this Court's consideration, he has not waived his challenge to the ALJ's decision or the possibility that his newly submitted evidence warrants a remand to the Social Security Administration under Sentence 6 of 42 U.S.C. §405(g).

Additionally, waiver does not apply here because in the lone social-security case the Commissioner cites to support an application of waiver, the plaintiff was represented by counsel. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 465, 2003 WL 23140056, at *1 (6th Cir. 2003). In addition, although the plaintiff's counsel in *Kennedy* asserted that the plaintiff met or equaled a disability (listing 1.13) described in the Commissioner's Listing of Impairments, counsel waived this contention by not presenting any supporting explanation. *Id*. at 466. *Kennedy* is distinguished from the present case for several reasons: (1) Plaintiff proceeds without the assistance of an attorney, unlike the plaintiff in *Kennedy*; (2) Plaintiff's *pro-se* status dictates a liberal construction of his submissions in his favor; and (3) construing his submissions liberally in his favor sheds enough light to discern the basis for his claimed disabilities. Plaintiff, therefore, has not waived his challenge to the ALJ's decision.

The Commissioner next argues that substantial evidence supports ALJ Gaffaney's assessment of Plaintiff's residual functional capacity—his ability to perform work activities despite his limitations, *see Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006), and the ALJ's conclusion that Plaintiff is not disabled. The Commissioner further

argues that the evidence Plaintiff has submitted with his Memoranda—which includes his July 2014 and March 2015 MRI reports—does not warrant a remand to the Social Security Administration under Sentence 6 of 42 U.S.C. § 405(g). Before reaching these arguments, an exploration of some key facts along with Plaintiff's testimony is warranted.

Plaintiff was 38 years old on the date his asserted disability began (January 2, 2012). This placed him in the category of a "younger" person under social security regulations. 20 C.F.R. § 404.1563(c).[2] He graduated from high school and worked in the past as an electrician apprentice.

Plaintiff testified during a hearing held by the ALJ. He did so without representation by counsel or a non-attorney representative. His mother was present during the hearing and testified.

Plaintiff testified that he is 5′1″ tall and weighs 124 pounds. He lives with his mother, stepfather, and 7 dogs. At that time, he worked part-time as a delivery driver for a submarine-sandwich store.[3]

Plaintiff explained that he feels hot and cold in his right arm. He thinks nerve damage on his right side causes this problem. If someone touches his right arm, he feels pressure. He uses his left hand, not his right hand, to test the temperature of water so he will not burn himself. (Doc. #6, *PageID* #125). If he happens to cut his right arm, he will not notice until someone points it out to him. *Id*. at 125. His right arm is constantly numb and

---

[2] Citations to social security regulations will identify the pertinent Disability Insurance Benefits regulations with full knowledge of the corresponding Supplemental Security Income regulation.

[3] The ALJ concluded that this was not substantial gainful activity. *See* Doc. #6, *PageID* #82.

4

this keeps him awake at night. He reported, "I mean…, it's not, like, a pain. It's just annoying…." *Id*. at 131. A physician told him that he probably needs surgery on his right arm, but he cannot afford it. *Id*. at 124. Plaintiff has lost strength in his right arm and has difficulty picking things up with his right hand. For example, he takes out the trash using his left hand. *Id*. at 126. He writes and eats with his left hand.

Plaintiff also has back pain. He told the ALJ that sitting in a chair during the hearing was "killing [his] back," and he preferred to stand. *Id*. at 124, 131. He feels a stabbing pain in his left and right sides, below his ribs. He noted, "It feels like somebody just sticks a needle in there. And it hurts real bad." *Id*. at 124-25. Now and then, Plaintiff has similar needle-stabbing pain in the back of his head. *Id*. at 126.

Plaintiff explained that his pain leads him into depression. He's "not a very happy guy sometimes." *Id*. He has difficulty remembering addresses when he is working as a delivery driver. If someone distracts him, he completely forgets what he is thinking. He does not have difficulty getting along with people. He takes prescription eye drops for glaucoma. He testified that he "can't sleep" and takes Doxepin to help him sleep. *Id*. at 127. He is unaware of any side effects his medication causes him. *Id*.

When asked about his drinking, Plaintiff said, "It's slowed down considerably." *Id*. at 128. This, he explained, means about 5 or 6 cans of beer (12 ounces each) a day. *Id*.

Plaintiff's mother testified that she sees Plaintiff daily. She explained, "He doesn't sleep very well," he takes out the trash, and he helps with the dogs. *Id*. at 130. She noted, "He doesn't have a lot of energy. He's lost a lot of weight." *Id*.

Turning to the law, the Social Security Administration provides Disability Insurance

Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—*i.e.*, "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

As indicated above, ALJ Gaffaney concluded that Plaintiff was not under a disability. Judicial review of the ALJ's decision proceeds along two lines: whether he applied the correct legal standards and whether substantial evidence supports his findings. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance…." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

If the ALJ applied incorrect legal criteria, reversal may be warranted even though the

6

record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.

In reviewing the evidence connected to Plaintiff's applications for benefits, ALJ Gaffaney utilized the 5-step analysis enumerated in social security regulations. *See* 20 C.F.R. § 404.1520(a)(4); *see e.g., Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 931 (6th Cir. 2018). The ALJ's more significant conclusions, for present purposes, occurred at Steps 2 and 3 where he found that Plaintiff's severe impairments—"cervical spine degenerative disc disease with radiculopathy; eczema/cellulitis; depression; anxiety; and alcohol use"— plus his non-severe impairments, did not automatically qualify him for benefits under the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. #6, *PageID* #s 82-84).

At Step 4, the ALJ assessed Plaintiff's residual functional capacity or, more simply, the most he can and cannot do despite his impairments. 20 C.F.R § 404.1545(a)(1); *see Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 239 (6th Cir. 2002). The ALJ concluded that Plaintiff could perform the light work. He "is able to lift/carry 20 pounds occasionally and 10 pounds frequently; stand and walk 6 hours in and 8-hour workday; sit 6 hours during an 8-hour workday. [He] is limited to frequent, as opposed to constant, climbing of ladders and crawling. He limited to simple, routine tasks with only occasional changes in a routine setting and only occasional changes in a routine work setting and only occasional interaction with public, co-workers, and supervisors." *Id.* Given these abilities and limitations, Plaintiff could no longer work as an electrician apprentice, but there were a significant number of jobs available in the national economy that he could do, such as folder,

housekeeper, or sorter. *Id*. at 89-90. The ALJ's conclusion that Plaintiff could do such jobs meant he was not under a disability and not eligible to receive either Disability Insurance Benefits or Supplemental Security Income. *Id*.

Plaintiff's opposition to ALJ Gaffaney's decision is based, in part, on the results of a MRIs he had in December 2014 and March 2015. The ALJ did not have these test results before him at the time of his July 2014 decision. But Plaintiff submitted these test results and other materials (Exhibits 21E, 12F, and 13F) to the Appeal Council. (Doc. #6, *PageID* #75). In July 2015, the Appeals Council denied Plaintiff's request for review, effectively affirming the ALJ's decision. *Id*. at 70-71.

The first potentially dispositive issue is whether Plaintiff is entitled to remand based on the medical evidence he obtained and submitted the Social Security Administration's Appeals Council after the ALJ issued his decision.

Under sentence 6 of 42 U.S.C. § 405(g), a proscription arises: Plaintiff's new evidence is not examined to determine whether to uphold, reverse, or modify the ALJ's decision. *See Cline v. Comm'r of Soc. Sec*., 96 F.3d 146, 148 (6th Cir. 1996). Instead, sentence 6 provides this Court with authority to "remand the case for further administrative proceedings in light of the new evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Id*. (citing *Cotton v. Sullivan,* 2 F.3d 692, 695-96 (6th Cir. 1993)).

> [E]vidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finkelstein,* 496 U.S. 617, 626, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990). Such evidence is material only if there is "a reasonable probability that the Secretary [now, Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore v. Sec'y of Health &*

8

> *Human Servs.,* 865 F.2d 709, 711 (6th Cir. 1988). A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. *Willis v. Sec'y of Health & Human Servs.,* 727 F.2d 551, 554 (1984) (per curiam).... [T]he burden of showing that a remand is appropriate is on the claimant. *Oliver v. Sec'y of Health & Human Servs.,* 804 F.2d 964, 966 (6th Cir. 1986).

*Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Plaintiff bears the burden of demonstrating that a sentence-6 remand is proper. *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 653 (6th Cir. 2009); *see also Oliver v. Sec'y of Health and Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986).

The Commissioner contends that a sentence-6 remand is neither appropriate nor warranted because some—6 pages—of the evidence Plaintiff submitted to the Appeals Council is not "new." This is correct as to those 6 pages, *see* Doc. #6, *PageID* #s 508-13, yet much of Plaintiff's recently submitted evidence is new. The MRI reports in particular are dated after the ALJ's July 2014 decision. Because these reports and other evidence Plaintiff submitted to the Appeals Council did not exist a the time of the ALJ's decision, it constitutes new evidence under sentence 6. *See Sullivan,* 496 U.S. at 626.

Good cause supports Plaintiff's failure to obtain and submit this evidence to the ALJ before he issued his decision. Plaintiff testified during the ALJ's hearing that he "just got accepted for Medicaid through Job and Family Services." (Doc. #6, *PageID* #124). Medicaid therefore did not provide him health coverage much before the ALJ's hearing occurred. This reasonably explains why he was unable to obtain and provide his new evidence to the ALJ. He simply could not afford to pay for the MRIs before obtaining Medicaid. Additionally, when the ALJ asked Plaintiff if he had "signed up for Obamacare…," Plaintiff responded, "Yeah, I tried that." *Id*. The ALJ did not further

9

question Plaintiff about whether he had health insurance at any time before the hearing. Plaintiff testified, moreover, that surgery would cost him up to $3,000, "that's, like a years pay to me." *Id*. The record leaves little doubt that Plaintiff could not afford health insurance and lacked health-insurance coverage until he began receiving Medicaid. Moreover, Plaintiff promptly obtained the September 2014 MRI once his Medicaid kicked in. All these circumstances add up to good cause for Plaintiff's failure to obtain and submit his new evidence before the ALJ issued his decision.

The Commissioner next argues that Plaintiff's evidence is not material because much of it came into existence well after the ALJ's July 2014 decision and, consequently, does not impact Plaintiff's health status during the time period the ALJ adjudicated. Given this, the evidence would not alter the ALJ's decision and is cumulative and not material, according to the Commissioner.

The Commissioner, however, overlooks the specific information provided in the spinal MRI taken on December 29, 2014. It appears that this MRI was the first one Plaintiff underwent with gadolinium. The physician who reviewed this MRI identified a "[p]rominent thoracic cord syrinx. There is a slitlike cavity in the posterolateral aspect of the spinal cord on the right and extends all the way from C1 into the thoracic region. Appears thickest at C5 and measures 4 mm in maximal diameter. The etiology is inapparent. No cord compression of significance is seen…." (Doc. #11, *PageID* #594).

In March 2015, Plaintiff underwent an MRI of his lumbar spin without contrast, which showed mild degenerative changes with borderline spinal stenosis at L4-5 and mild neural foraminal encroachment at L4-5. The reviewing physician also reported his

impression that Plaintiff had "syringiohydromyelia cervical thoracic." *Id*. at 599. Here is where the materiality of Plaintiff's new evidence begins to emerge.

The March 2015 impression of syringiohydromyelia correlates with the December 2014 MRI report's description of a "[p]rominent thoracic cord syrinx." *Id*. "Syringomyelia is a disorder in which a fluid-filled cyst (called a syrinx) forms within the spinal cord. The syrinx can get bigger and elongate overtime, damaging the spinal cord and compressing and injuring the nerve fibers that carry information to the brain and from the brain to the rest of the body." https://wwwninds.nih.gov (search for "syringomyelia"). The term "syringiohydromyelia" used in the March 2015, rather than "syringomyelia" refers to the same type of spinal abnormality.[4]

These MRI test results are relevant to evaluating the intensity, persistence, and limiting effects (as Plaintiff explained to the ALJ) of his right-arm pain and numbness; his inability to feel temperature—he tests water temperature with his left had so he doesn't burn his right hand; his loss of feeling—he said he doesn't notice a right-arm cut until someone points it out to him; and his weakness in his right arm—he said he drops things, so he uses his left arm to do tasks like taking out the trash. Plaintiff's MRI results constitute objective evidence that correlates with Plaintiff's syringomyelia symptoms. As such, it constitutes evidence of "an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)).

---

[4] "Hydromyelia is sometimes used interchangeably with syringomyelia, the name for a condition that also involves cavitation in the spinal cord…." http://ninds.nih.gov (search for "hydromyelia").

11

The Commissioner's contention that Plaintiff's evidence pertains to a later time period that is after the adjudicated time period overlooks that Plaintiff often reported symptoms consistent with syringomyelia during the adjudicated period. As early as April 2012 (before his claimed disability onset date of March 28, 2013), he reported "no feeling in his rt [right] arm, neck & parts of [his] spine…." (Doc. #6, *PageID* #368). In June 2012, he complained of decreased sensation in his right hand. *Id.* at 371.

He reported numbness and was diagnosed with "right upper extremity paresthesias" in March 2012; he was diagnosed with paresthesia in July 2012 (Doc. #6, *PageID* #466). By definition, paresthesia generally involves "abnormal or unpleasant sensations that result from injury to one or more nerves, often described by patients as numbness or as a prickly, stinging, or burning feeling." <u>Taber's Cyclopedic Medical Dictionary</u>, p. 1519 (19th Ed. 2001). Similar entries in his medical records document his reports of numbness and other symptoms in later years, including information in his new medical evidence. *See* Doc. #6, *PageID* #s 491 ("Numbness of the right upper extremity"); 509 (neuropathy right arm); 511 ("right grip definite weakness," neuropathy upper limb); 512, 514 (neuropathy right arm, "sharp pain in lower back when sits down").

Plaintiff's new evidence contains the first MRI results in the record, indicating that it wasn't until he underwent the MRI that there was objective medical evidence of syringomyelia. The most reliable way to diagnose syringomyelia is with an MRI, which "produce[s] clear images of the brain and spinal cord." https://wwwninds.nih.gov (search for "syringomyelia"; "How is syringomyelia diagnosed?"). This objective evidence is consistent with the symptoms Plaintiff reported to physicians during the adjudicated time

period and the symptoms he described to the ALJ. Given this, his new evidence creates a reasonable probability that the ALJ would have found Plaintiff had some, if not significant, limitations in the use of his right extremity during the adjudicated time period, thus altering his assessment of Plaintiff's residual functional capacity—which contained no limitation at all on Plaintiff's use of his right extremity. For emphasis: The ALJ found that Plaintiff could frequently, although not constantly, climb ladders. Anyone who climbs a ladder using only one extremity, or with a significantly limited extremity, surely plays a daredevil's game.

For these reasons, Plaintiff's new objective evidence leads to a reasonable probability that the Social Security Administration would have reached a different disposition of Plaintiff's applications for disability benefits.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Anthony Hernandez was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Social Security Administration under sentence 6 of 42 U.S.C. § 405(g) for further consideration consistent with this Report and any Decision and Entry adopting this Report and Recommendations; and

4. The case be administratively processed, but not terminated, on the docket of this Court.

April 4, 2019          *s/Sharon L. Ovington*
                       Sharon L. Ovington
                       United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).