**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| GAIL S. o/b/o ANTHONY H.,[1] | : | Case No. 3:17-cv-00419 |
| Plaintiff, | : : | District Judge Walter H. Rice |
| vs. | : : | Magistrate Judge Caroline H. Gentry |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : : : | |
| Defendant. | : : | |

---

## REPORT AND RECOMMENDATIONS[2]

---

## I.    INTRODUCTION

Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income in April 2018. Plaintiff's claims were denied initially and upon reconsideration. After a hearing at Plaintiff's request, an Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because he was not under a "disability" as defined in the Social Security Act. After the Appeals Council denied Plaintiff's request for review of that decision, Plaintiff filed this lawsuit without the assistance of counsel. United States District Judge Walter H. Rice remanded the case to the Commissioner under Sentence Six of 42 U.S.C. § 405(g). The Appeals Council

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] *See* 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendations within the specified time period.

thereafter remanded the case pursuant to the District Court's order. Another ALJ held a hearing pursuant to the remand order and again concluded that Plaintiff was not under a "disability" as defined in the Social Security Act. The instant case was reopened on October 27, 2021. Unfortunately, Plaintiff died on November 4, 2021. This Court subsequently granted the motion of Plaintiff's mother to intervene as an interested party.

This matter is before the Court on Intervenor Plaintiff's Statement of Errors (Doc. 23), the Commissioner's Memorandum in Opposition (Doc. 25), the administrative record (Doc. 6), and the supplemental administrative record (Doc. 18).

## II.    BACKGROUND

Intervenor Plaintiff asserts that Plaintiff was under a disability from January 2, 2012, through the date of Plaintiff's death on October 27, 2021. Plaintiff was 38 years old on the alleged disability onset date, and he was 47 years old at the time of his death. Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations for the relevant time period. *See* 20 C.F.R. §§ 404.1563(d), 416.963(d).[3] Plaintiff had a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(3).

The evidence in the administrative record is summarized in the ALJ's decision (Doc. 18-2, PageID 649-659 ), Intervenor Plaintiff's Statement of Errors (Doc. 23), and the Commissioner's Memorandum in Opposition (Doc. 25). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

---

[3] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

### III.    STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id.*

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the

evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV. THE ALJ'S DECISION

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1: Plaintiff did not engage in substantial gainful activity after January 2, 2012, the alleged onset date.

Step 2: He had the severe impairments of "lumbar and cervical spine degenerative disc disease with radiculopathy; syringomyelia (also

4

known as a syrinx, a spinal cord cyst); congenital clubbing of the fingers; mild carpal tunnel syndrome; eczema; cellulitis; chronic obstructive pulmonary disease ("COPD"); alcoholic neuropathy; alcoholic cirrhosis of the liver; anxiety; depression; tobacco abuse; and alcohol abuse."

Step 3:    He did not have an impairment or combination of impairments that met or equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:    His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of light work as defined in 20 CFR § 404.1567(b), subject to the following limitations: "never climb ladders, ropes, or scaffolds; never crawl; occasionally climb ramps and stairs; occasionally balance, stoop, crouch, and kneel; avoid concentrated exposure to environmental irritants, poorly ventilated areas, and industrial chemicals; avoid hazardous machinery and unprotected heights; work is limited to simple, routine, and repetitive tasks; performed in a work environment free of fast paced production requirements; involving only simple, work-related decisions; with few, if any, workplace changes; can be around coworkers throughout the day, but with only occasional interaction with coworkers."

He was unable to perform any of his past relevant work.

Step 5:    Considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he could have performed.

(Doc. 18-2, PageID 651-658.) These findings led the ALJ to conclude that Plaintiff did not meet the definition of disability and was not entitled to benefits. (*Id.* at PageID 659.)

## V.    ANALYSIS

In her Statement of Errors, Intervenor Plaintiff outlined many hardships in her life and in Plaintiff's life, as well as alleged inaccuracies in Plaintiff's medical record. (Doc. 23.) She also included several pictures of Plaintiff and Plaintiff's death certificate. (*Id.* at

5

PageID 2612-43.) Because Intervenor Plaintiff is proceeding pro se and does not identify any specific errors with the ALJ's decision currently before the Court, the Court has carefully reviewed the ALJ's decision to determine whether the ALJ's critical findings of fact were made in compliance with the applicable law and whether substantial evidence supports those findings.

For the reasons discussed more fully below, the ALJ committed reversible error by inadequately evaluating the opinions of Plaintiff's family physician and the consultative physician, inadequately evaluating Plaintiff's symptom severity and treatment history pursuant to the applicable legal requirements, and identifying an RFC that is not supported by substantial evidence in the record.

### A.     <u>Opinion Evidence</u>

#### 1. Applicable Law

Because Plaintiff's claim was filed before March 27, 2017, the opinion evidence rules set forth in 20 C.F.R. § 404.1527 apply. These regulations require ALJs to adhere to certain standards when weighing medical opinions. First, the ALJ is required to consider and evaluate every medical opinion in the record. *See* 20 C.F.R. § 404.1527(b), (c). Further, "greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citations omitted). The regulations define a "treating source" as a claimant's "own acceptable medical source who provides . . . medical treatment or evaluation and who has . . . an ongoing treatment relationship" with a claimant. 20 C.F.R. § 404.1527(a)(1). The "treating

physician" rule is straightforward: "Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014).

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson v. Comm'r of Soc. Sec*, 378 F.3d 541, 544 (6th Cir. 2004)).

"Separate from the treating physician rule, but closely related, is the requirement that the ALJ 'always give good reasons' for the weight ascribed to a treating-source opinion." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020) (citing 20 C.F.R. § 404.1527(c)(2); other citation omitted)); *see Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Hargett*, 964 F.3d at 552 (quoting SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996))[4]. The goal is to make clear to any subsequent reviewer the weight given and the reasons for giving that weight.

---

[4] SSR 96-2p has been rescinded. However, this rescission is effective only for claims filed on or after March 27, 2017. See SSR 96-2p, 2017 WL 3928298 at *1. Because Plaintiff filed his application for benefits prior to March 27, 2017, SSR 96-2p still applies in this case.

(*Id.*) Substantial evidence must support the reasons provided by the ALJ. (*Id.*)

As for medical opinions from sources that are not "treating sources" as defined in 20 C.F.R. § 404.1527(a)(1), the ALJ must consider the following factors set forth for the evaluation of medical opinions: examining relationship; treatment relationship; supportability; consistency; specialization; and other factors. 20 C.F.R. § 404.1527(c).

The Social Security regulations, rulings, and Sixth Circuit precedent charge the ALJ with the final responsibility for determining a claimant's RFC. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the RFC "is reserved to the Commissioner."). Moreover, the Social Security Act and agency regulations require an ALJ to determine a claimant's RFC based on the evidence as a whole. 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 404.1520(a)(4)(iv) ("the administrative law judge . . . is responsible for assessing your [RFC]"). The ALJ's RFC assessment must be "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements'—i.e., opinions about what the individual can still do despite his or her impairment(s)—submitted  an individual's treating source or other acceptable medical sources." *Id.* (footnote omitted).

Section 404.1527(a)(1) of Title 20 of the Code of Federal Regulations defines "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity" of a claimant's impairments, including "symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." The regulations require ALJs to consider and evaluate *every* medical opinion in the record, regardless of its source. 20 C.F.R.

§ 404.1527(c) (emphasis added). Further, if the RFC assessment conflicts with an opinion from a medical source, "the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

### 2. Dr. Rose

Family physician Bernard Rose, M.D. opined in a note dated July 16, 2014, that Plaintiff had a cervical neuropathy which "require[d] "working only 20 hours a week." (Doc. 6, PageID 513.) The ALJ did not address or assign weight to Dr. Rose's opinion in the decision. (Doc. 18-2, PageID 649-659.) The ALJ's RFC conflicts with Dr. Rose's opinion, because the ALJ found Plaintiff capable of performing a reduced range of light work on a full-time basis. (Doc. 18-2, PageID 654.)

The ALJ committed reversible error because he failed to address Dr. Rose's opinion. As discussed above, the regulations require ALJs to consider and evaluate *every* medical opinion in the record, regardless of its source. 20 C.F.R. § 404.1527(c) (emphasis added). The ALJ must also give "good reasons" for the weight assigned to a treating source opinion. *Hargett*, 964 F.3d at 552, citing 20 C.F.R. § 404.1527(c)(2). Because the ALJ failed to address or assign weight to Dr. Rose's opinion, he also failed to provide any reasons—much less any "good reasons"—for not adopting the opinion.

The Court may that find a violation of the "good reasons" requirement constitutes harmless error if any of the following criteria are met: "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) . . . even

9

though she has not complied with the terms of the regulation." *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011) (citation omitted).

In this case, the ALJ's violation of the good reasons rule is not harmless error. Dr. Rose's opinion is not patently deficient, because the ALJ agreed with Dr. Rose's category of diagnosis (cervical neuropathy) and found that it was a "severe" impairment. (Doc. 18-2, PageID 651.) Likewise, the ALJ did not adopt Dr. Rose's assessment or make findings consistent with it. (*Id.* at PageID 654.) Nor did the ALJ meet the goal of 20 C.F.R. § 1527(d)(2), because the ALJ's silence leaves this Court without a clear understanding of why the ALJ did not credit Dr. Rose's opinion. *See Cole*, 661 F.3d at 940.

The ALJ violated Social Security's procedural rules by failing to address Dr. Rose's opinion. Thus, reversal is warranted.

### 3. Dr. Oza

Similarly, the ALJ erred by failing to address the full opinion of consultative physician Amita Oza, M.D. Dr. Oza performed a consultative physical examination on January 21, 2021, which notably occurred after the June 2020 hearing and at the ALJ's request. (Doc. 18-11, PageID 2547-59.) Dr. Oza diagnosed several medical conditions in her medical report, including "peripheral neuropathy due to alcoholism." (*Id.* at PageID 2548.) She opined that "[d]ue to [a] combination" of these conditions "along with . . . cognitive impairment, work related activities are affected at this time." (*Id.*)

Dr. Oza also completed a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" form. (*Id.* at PageID 2554-59.) Dr. Oza opined that Plaintiff was unable to lift any amount of weight and that he could sit, stand, and/or walk

for no more than ten minutes at a time. (*Id.* at PageID 2554-55.) According to Dr. Oza, Plaintiff could only occasionally use his hands, and he could never operate foot controls, due to peripheral neuropathy. (*Id.* at PageID 2556.) Dr. Oza opined that Plaintiff could never perform postural activities and could not tolerate any exposure to environmental conditions. (*Id.* at PageID 2557-58.) She further opined that Plaintiff was unable to take care of his activities of daily living. (*Id.* at PageID 2559.)

The ALJ addressed Dr. Oza's opinion and gave it "some weight." (Doc. 18-2, PageID 657.) The ALJ summarized and analyzed Dr. Oza's opinion as follows:

> On January 21, 2021, the claimant presented to Dr. Oza for physical consultative examination (27F). Dr. Oza examined the claimant and gave somewhat vague conclusions regarding his functioning. Dr. Oza concluded that the claimant's work activities are affected, but she did not give specific, functional limitations. However, Dr. Oza's examination findings were mostly consistent with other findings throughout the record, of which other opinions were based (1A; 7A). Therefore, Dr. Oza's opinion is afforded some weight.

(*Id.*)

As discussed above, the regulations require ALJs to consider and evaluate *every* medical opinion in the record, regardless of its source. 20 C.F.R. § 404.1527(c) (emphasis added). In her Medical Source Statement, Dr. Oza provided specific, functional limitations regarding Plaintiff's ability to lift, carry, sit, stand, walk, and perform other postural and manipulative functions in that form. (*Id.* at PageID 2554-59.) These limitations constitute "medical opinions" as defined in the regulations. The ALJ was required to evaluate Dr. Oza's opinion about these limitations in the decision.

But the ALJ did not even acknowledge any of the limitations identified by Dr. Oza. Instead, the ALJ evaluated only Dr. Oza's narrative opinion that Plaintiff's "work activities are affected." (*See* Doc. 18-2, PageID 657 and Doc. 18-11, PageID 2548.) And it appears that the ALJ was unaware of these limitations, since the ALJ wrongly stated that Dr. Oza "did not give specific, functional limitations." (Doc. 18-2, PageID 657.)

Because the ALJ summarized Dr. Oza's opinion in the narrative report but did not mention the limitations in the Medical Source Statement form—and in fact wrongly stated that there were no such limitations—the Court must conclude that the ALJ did not consider or weigh this portion of her opinion. By failing to consider the entirety of Dr. Oza's opinion, the ALJ violated the applicable regulations. Thus, reversal is warranted.

### B.  <u>Symptom Severity</u>

#### 1. Applicable Law

When a claimant alleges symptoms of disabling severity, the Social Security Administration uses a two-step process for evaluating an individual's symptoms. *See* 20 C.F.R. § 404.1529(c)(1); Soc. Sec. R. 16-3p, 2017 WL 5180304, *3 (Oct. 25, 2017) (effective March 28, 2016). First, the ALJ must determine whether an individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. *Id.* Second, the ALJ must evaluate the intensity and persistence of the individual's symptoms and determine the extent to which the individual's symptoms limit her ability to perform work-related activities. *Id.* at *4. The ALJ must examine "the entire case record, including the objective medical evidence; the

individual's relevant statements; statements and other information provided by medical sources and others; and any other relevant evidence in the record." *Id.* at *4-5.

> In addition to this evidence, the ALJ should consider the following factors:

> 1. Daily activities;
> 2. The location, duration, frequency, and intensity of pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id*. at *7-8; *see also* 20 C.F.R. § 404.1529(c)(3). However, an ALJ does not necessarily need to discuss every factor in every case—for example, if there is no evidence regarding one of the factors, that factor will not be discussed because it is not relevant to the case. SSR 16-3p at *8. Although an ALJ is not required to analyze all seven factors, an ALJ's decision nevertheless "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10.

Further, "if the individual fails to follow prescribed treatment that might improve symptoms, [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." *Id*. at *9. However, an

13

ALJ "will not find an individual's symptoms inconsistent [] on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* An ALJ may even need to "contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints." *Id.*

The SSR identifies possible reasons for not pursing treatment that an ALJ can consider when evaluating an individual's treatment history. 2017 WL 5180304, *10. The SSR clarifies that the reasons listed are merely examples and that an ALJ "***will*** consider and address reasons for not pursuing treatment that are pertinent to an individual's case." *Id.* (emphasis added). Moreover, the ALJ "***will*** explain how [he or she] considered the individual's reasons" in the evaluation of the individual's symptoms. *Id.* (emphasis added). The Sixth Circuit has confirmed that, pursuant to SSR 16-3p, the ALJ should consider possible reasons why a claimant failed to seek medical treatment consistent with the degree of his or her complaints "before drawing an adverse inference from the claimant's lack of medical treatment." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016).

**2. Analysis**

In this case, when evaluating the severity of Plaintiff's symptoms, the ALJ made numerous references to Plaintiff's treatment history and non-compliance. The ALJ stated:

- [Plaintiff's] alcohol use is non-compliant with his treatment plan (SSR 16-3p) (Doc. 18-2, PageID 652);

14

- [Plaintiff's] poor insight and judgment is related to his ongoing non-compliance with sobriety (SSR 16-3p) (*Id.* at PageID 653);

- [Plaintiff] also has alcohol-induced neuropathy due to his non-compliance with alcohol cessation, per his treatment plan and his physician's advice (SSR 16-3p) (Doc. 18-2, PageID 655);

- [Plaintiff] does have alcohol-induced cirrhosis of the liver due to non-compliance with alcohol cessation (SSR 16-3p). The claimant's treatment for his cirrhosis includes alcohol cessation, however, the claimant testified that he drinks at least six beers per day (Testimony) (SSR 16-3p) (*id.*); and

- [Plaintiff] has a long history of non-compliance with substance abuse (SSR 16-3p). [Plaintiff's] providers have indicated that the claimant's non-compliance with alcohol cessation affects his memory (SSR 16-3p). The severity of the claimant's complaints are [sic] not supported by objective evidence, or with his own actions, including a lack of treatment plan compliance. The overall objective evidence most consistent indicates that the claimant has intact memory. . . . Other notes indicate that the claimant has poor recall, but only "due to drinking" . . . The claimant's alcohol use is non-compliant with his treatment plan (SSR 16-3p). (*Id.* at PageID 656.)

The ALJ concluded that although Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at PageID 654-55.)

To support this conclusion, the ALJ relied heavily on Plaintiff's noncompliance and consistently cited to SSR 16-3p. However, the ALJ did not develop the record to consider any possible reasons for the noncompliance as required by SSR 16-3p. The transcript of the hearing indicates that the ALJ asked Plaintiff some questions about his drinking; specifically, he asked how much and how frequently Plaintiff drank alcohol.

(Doc 18-2, PageID 677-78.) But the ALJ did not ask Plaintiff whether he had sought any treatment for his addiction or why he continued to drink contrary to treatment recommendations. (*Id.* at PageID 670-95.)

In sum, although the ALJ repeatedly cited to SSR 16-3p, he did not comply with that rule because he failed to consider any possible reasons for Plaintiff's failure to comply with treatment or seek treatment consistent with the degree of complaints alleged. Nor did the ALJ develop the record by inquiring about why Plaintiff was noncompliant or failed to seek additional treatment. The ALJ's heavy reliance on Plaintiff's noncompliance, coupled with the ALJ's failure to evaluate Plaintiff's treatment history pursuant to the applicable legal requirements, is an error of law warranting reversal.

### C.   <u>Alcoholism</u>

The ALJ erred by identifying an RFC that is not supported by substantial evidence in the record. Specifically, the RFC that the ALJ identified did not adequately account for Plaintiff's alcoholism and its effects. The ALJ's analysis also does not comply with SSR 13-2p. For these reasons, too, the Commissioner's decision must be reversed.

#### 1. Applicable Law

The Social Security Act provides that "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J). Social Security Ruling 13–2p interprets this regulation and governs the evaluation of cases involving drug addiction and alcoholism (DAA). 2013 WL 621536 (Feb. 20, 2013) (effective March 22, 2013).

SSR 13-2p applies if "evidence from acceptable medical sources … establish[es] that DAA is a medically determinable impairment(s)." 2013 WL 621536 at *3. The ALJ will determine materiality if: (1) there is "medical evidence from an acceptable medical source establishing that a claimant has a Substance Use Disorder," and (2) the claimant is found to be disabled "considering all impairments, including the DAA." *Id.* at *4; *see also* 20 C.FR. § 404.1535. The ALJ must decide "whether the claimant would continue to be disabled if he or she stopped using drugs or alcohol, that is … whether DAA is *material* to the finding that the claimant is disabled." *Id.* (emphasis in original). If the claimant were to stop using drugs or alcohol, DAA is material if he would not be disabled in that circumstance, and is not material if he would be disabled in that circumstance. *Id.*

### 2. Analysis

The ALJ found that Plaintiff's alcohol abuse was a severe impairment at Step 2. (Doc. 18-2, PageID 651.) But instead of fully considering the cumulative effect of Plaintiff's alcoholism on his alcoholic neuropathy, cirrhosis, and other impairments—as required by SSR 16-3p—the ALJ only considered whether Plaintiff's alcoholism detracted from the consistency of his reported symptoms. (*See id.* at PageID 654-56.)

For example, the ALJ stated that Plaintiff's alcohol use was "non-compliant with his treatment plan (SSR 16-3p)" (*id.* at PageID 652), and concluded that Plaintiff's "poor insight and judgment is related to his ongoing non-compliance with sobriety (SSR 16-3p)." (*Id.* at PageID 653.) The ALJ subsequently discussed Plaintiff's alcoholism in the RFC analysis, specifically related to the evaluation of Plaintiff's symptom severity. (*Id.* at PageID 652-66.) The ALJ repeatedly commented on Plaintiff's history of non-

17

compliance with alcohol cessation and concluded that Plaintiff's reports of the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at PageID 654-56.)

The ALJ explained that he accounted for Plaintiff's cirrhosis, "despite [Plaintiff] being non-compliant with treatment," by including a limitation in the RFC for Plaintiff to "avoid certain work hazards due to any associated fatigue." (Doc. 18-2, PageID 655.) The ALJ also concluded that considering the combined effects of Plaintiff's alcoholism (which the ALJ again noted was "non-compliant with his treatment plan") and his other severe mental impairments, Plaintiff was limited to "simple, routine, and repetitive tasks, with additional limitations to work pace, social interaction, and workplace stress including only few, if any, workplace changes." (*Id.* at PageID 656.)

A review of the entire record indicates that the ALJ's RFC assessment is not supported by substantial evidence and did not fully account for Plaintiff's alcoholism. Although the ALJ cited to several examination findings to support his conclusions, the ALJ failed to acknowledge numerous hospitalizations, many of which lasted more than one week. The ALJ therefore did not fully account for Plaintiff's alcoholism and its effects on his other impairments when assessing Plaintiff's RFC.

For example, Plaintiff was hospitalized three times in August 2017 (August 1-7, 2017; August 11-17, 2017; and August 18-21, 2017) for a principal diagnosis of alcoholic cirrhosis of the liver with ascites. (Doc. 18-8, PageID 1298-1351, 1354-98, 1403-48). He was thereafter referred to hospice care. (*Id.* at PageID 170.) While Plaintiff was a hospice patient, he was hospitalized for a few days in February 2018 for liver failure, where he

was noted to have end-stage liver disease. This was followed by another hospitalization in March 2018 for alcoholic liver cirrhosis with ascites. (*Id.* at PageID 1249-50, 1294.) Plaintiff was discharged from hospice care in July 2018, apparently because his insurer would no longer cover the treatment. (*Id.* at PageID 1744.)

Plaintiff subsequently sought emergency room treatment in July 2019 for falling while carrying groceries, and he was hospitalized for over a week beginning on July 23, 2019, for blood in his urine. (*Id.* at PageID 1204-06, 1107-1200.) After another week-long hospitalization in August 2019, he was discharged to a rehabilitation center. (*Id.* at PageID 1015-1104.) Doctors referred to severe alcoholic liver disease in the discharge summary. (*Id.* at 1015.) Plaintiff was re-hospitalized in October 2019, again for alcoholic cirrhosis of the liver with ascites. (*Id.* at PageID 936-51.)

An ALJ is not required to directly address every piece of evidence submitted by a party. *Kornecky v. Comm'r of Soc. Sec.,* 167 F. App'x 469, 508 (6th Cir. 2006). But the ALJ's failure to acknowledge any of these hospitalizations or complications leads the Court to conclude that the RFC is not supported by substantial evidence. Reversal is therefore required.

The Court further finds that the ALJ did not consider Plaintiff's alcoholism in the manner required by SSR 13-2p. Based on the ALJ's numerous comments about Plaintiff's non-compliance with alcohol cessation, it appears that the ALJ essentially considered the net effects of Plaintiff's severe impairments in the sequential evaluation process. This was incorrect. The ALJ should have first considered the full effects of Plaintiff's severe impairments, including alcoholism, and then proceeded to determine

whether Plaintiff's alcoholism was material—that is, whether he would or would not have been disabled if he had stopped the alcohol abuse. *See* SSR 13-2p. Thus, the ALJ failed to apply the correct legal standard for evaluating Plaintiff's alcoholism. This failure constitutes reversible error and is another reason why the case should be remanded.

## VI. REMAND

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding that the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249. Remand may also be warranted when new and material evidence is presented and there is "reasonable probability" that the ALJ would have rendered a differing decision if presented with the new evidence. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

### A.    Sentence Four Remand

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand

under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted only "if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted). In other words, a judicial award of benefits is proper "only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Id.*

A judicial award of benefits pursuant to Sentence Four of Section 405(g) is unwarranted in the present case because all factual issues have not been resolved, and the record does not adequately establish Plaintiff's entitlement to benefits. *Faucher*, 17 F.3d at 176. As discussed above, the ALJ did not adequately evaluate Plaintiff's alcoholism under SSR 13-2p. The record does not clearly show whether Plaintiff's cirrhosis, which ultimately led to his death (Doc. 23-2, PageID 2643), would have improved to the point of rendering Plaintiff non-disabled if he had stopped using alcohol.

However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his application for Disability Insurance Benefits should be granted.

Because the record documents no significant periods of abstinence from alcohol, the Court recommends that the ALJ obtain testimony from a medical expert to determine whether Plaintiff's impairments would have improved in the absence of alcohol abuse, pursuant to SSR 13-2p.

### B.  Sentence Six Remand

Pursuant to Sentence Six of 42 U.S.C. § 405(g), the Court has the authority to "remand the case for further administrative proceedings in light of the new evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Cline v. Comm'r of Soc. Sec.,* 96 F.3d 146, 148 (6th Cir. 1996) (citing *Cotton v. Sullivan,* 2 F.3d 692, 695-96 (6th Cir. 1993)).  Evidence is "new" only if it was "not in existence or available to the claimant at the time of the administrative proceeding." *Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001) (citation omitted). Such evidence is "material" only if there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* Further, a claimant shows "good cause" by demonstrating "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Id.* Plaintiff bears the burden of demonstrating that a Sentence Six remand is appropriate. *Id.; see also Allen v. Comm'r of Soc. Sec.*561 F.3d 646, 653 (6th Cir. 2009).

As discussed above, Intervenor Plaintiff's Statement of Errors consists of an outline of hardships, alleged inaccuracies in Plaintiff's medical record, several pictures of Plaintiff, and Plaintiff's death certificate, which documents the reasons for his death.

(Doc. 23.) The ALJ did not have the opportunity to review this evidence, specifically Plaintiff's death certificate.

This presents the question of whether the Court should remand the case to the ALJ for consideration of the evidence submitted after the ALJ's decision. As an initial matter, Intervenor Plaintiff did not specifically request a Sentence Six remand. However, this Court noted in the prior Sentence Six remand that Plaintiff "'proceed[ed] without the assistance of an attorney' and his status 'dictate[d] a liberal construction of his submissions in his favor.'" (Doc. 18-3, PageID 740.) Intervenor Plaintiff's pro se status, then, also warrants a liberal interpretation of submissions in her favor.

The Court finds that the evidence submitted by Intervenor Plaintiff is new and material, and that good cause exists for the failure to present the evidence to the ALJ. *Foster*, 279 F.3d at 357. The evidence satisfies the "new" requirement because it was "not in existence or available" at the time of the prior hearing. *Id.* Intervenor Plaintiff also established "good cause," as Plaintiff did not die until after the hearing. *Id.* Finally, the evidence is material, because there is a reasonable probability that the ALJ would have reached a different disposition if presented with the new evidence. *Id.* Had the ALJ known that Plaintiff's liver disease and cirrhosis were serious enough to ultimately result in Plaintiff's death, the ALJ may have included additional limitations in the RFC. The ALJ may also have found that Plaintiff's condition would not have improved, even in the absence of alcohol abuse, and that Plaintiff's alcoholism was therefore not material.

For all of these reasons, a Sentence Six remand is warranted.

### C.    Remand Under Both Sentence Four and Sentence Six

For the reasons discussed above, this case involves both a Sentence Four and Sentence Six remand under Section 405(g). Under Sentence Four of Section 405(g), the Court is authorized to enter "a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In a Sentence Six remand, the Court does not rule on the correctness of the administrative decision as in a Sentence Four determination. *Faucher,* 17 F.3d at 174 (citing *Melkonyan v. Sullivan,* 501 U.S. 89 (1991)). Instead, following a Sentence Six remand, "the Secretary must return to the district court to 'file with the court any such additional or modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.'" *Melkonyan,* 501 U.S. at 98 (citations omitted).

The Sixth Circuit has not addressed the situation where a remand is warranted under both Sentence Four and Sentence Six. However, this Court has followed Eleventh Circuit precedent and held that a case may be remanded on both grounds:

> To summarize, after reviewing § 405(g) and the applicable case law . . . if both sentence-four and sentence-six grounds for remand exist in a disability case, the case may be remanded on both grounds. District court jurisdiction over the case continues after the entry of the remand judgment as a result of the sentence-six prong of the remand. If a claimant achieves a remand on both sentence-four and sentence-six grounds, and thereafter succeeds on remand in part due to the sentence-six ground, the claimant may return to district court to request entry of judgment after remand proceedings have been completed. In such a case, the claimant may wait until the post-remand judgment is entered before filing his EAJA application.

*Reeves v. Comm'r of Soc. Sec.*, No. 1:13-CV-325, 2014 WL 2434112, at *8–9 (S.D. Ohio May 29, 2014) (Litkovitz, M.J.) (citing *Jackson v. Chater,* 99 F.3d 1086, 1097-98 (11th Cir. 1996), *report and recommendation adopted*, No. 1:13-CV-325, 2014 WL 2773258 (S.D. Ohio June 19, 2014) (Spiegel, D.J.); *see also Banik v. Comm'r of Soc. Sec.*, No. 1:11-CV-342, 2012 WL 2190816 (S.D. Ohio June 14, 2012) (Litkovitz, M.J.), *report and recommendation adopted,* No. 1:11-CV-342, 2012 WL 2890890 (S.D. Ohio July 16, 2012) (Barrett, D.J.)

Accordingly, a "dual basis" remand is appropriate in this case pursuant to both Sentence Four and Sentence Six of 42 U.S.C. § 405(g). It is recommended that this matter be reversed and remanded for further proceedings consistent with this decision under Sentence Four of Section 405(g). It is also recommended that this matter be remanded under Sentence Six of Section 405(g) for consideration of the additional medical evidence submitted after the hearing.

**IT IS THEREFORE RECOMMENDED THAT**:

1.     Plaintiff's Statement of Errors (Doc. 23) be GRANTED;

2.     The Court VACATE the Commissioner's non-disability determination;

3.     No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4.     This matter be REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and any Decision and Entry adopting this Report and Recommendations;

5.     This matter be REMANDED to the Social Security Administration under Sentence Six of 42 U.S.C. § 405(g) for further consideration consistent with

this Report and any Decision and Entry adopting this Report and Recommendations; and

6.    This case be administratively processed, but not terminated, on the Court's docket.

                                            */s/ Caroline H. Gentry*
                                            Caroline H. Gentry
                                            United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).